UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NELSON ARREIZAGA,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

Civ. No. 17-10631 (KM)

OPINION

### KEVIN MCNULTY, U.S.D.J.:

Mr. Nelson Arreizaga brings this action pursuant to 45 U.S.C. § 405(g) and §1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims to a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

### I. BACKGROUND[1]

Mr. Arreizaga seeks to reverse a decision that he did not meet the Social Security Act's definition of disability. Mr. Arreizaga originally applied for DIB on November 4, 2013. The claim was denied initially and upon reconsideration on July 9, 2014. (R. 14).

---

[1] Citations to the record are abbreviated as follows:

"R." = Administrative Record (DE 6)

"Pl. Br." = Brief of Plaintiff Arreizaga (DE 12)

"SSA Br." = Administration's responding brief (DE 13)

"Pl. Reply" = Plaintiff Arreizaga's brief in reply (DE 15)

1

A hearing was held before an ALJ on August 20, 2014. (R. 14). Both the claimant and a vocational expert ("VE") testified. (Transcript at R. 27-71). On August 12, 2015, the ALJ rendered a decision denying benefits. (R. 11-26) On September 25, 2017, the Appeals Council denied Mr. Arreizaga's request for review of the ALJ's decision, rendering it the final decision of the Commissioner. (R. 1-8).

Mr. Arreizaga appealed to this Court, asserting that the ALJ erred in finding that he was not disabled from an onset date of May 2, 2013 through December 31, 2017. The case was reassigned to a Magistrate Judge (DE 16), and then transferred back to me for decision on February 4, 2019. (DE 17).

## II. DISCUSSION

To qualify for DIB (or Supplemental Security Income), a claimant must meet income and resource limitations and show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a

preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Ricardy Damille followed the five-step process in determining that Mr. Arreizaga was not disabled beginning May 2, 2013 through December 31, 2017. His findings may be summarized as follows:

4

**Step One:** At step one, the ALJ determined that Mr. Arreizaga had not engaged in substantial gainful activity since May 2, 2013, the alleged onset date. (R. 16).

**Step Two:** At step two, the ALJ determined that Mr. Arreizaga had the following severe impairments: cervical and lumbar disc herniation, cervical and lumbar radiculopathy, and carpal tunnel syndrome. (R. 16). The ALJ further determined that the record does not support a severe mental impairment. (R. 16–17).

**Step Three:** At step three, the ALJ found that Mr. Arreizaga did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. The ALJ made particular reference to Listings 1.02[2] and 1.04,[3] finding

---

[2] **1.02 *Major dysfunction of a joint(s) (due to any cause)*:** Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

OR

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

[3] **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

5

that the claimant's back disorder is not supported by the necessary diagnostic and clinical evidence. (R. 17). The ALJ also specifically considered Mr. Arreizaga carpal tunnel condition. (*Id.*).

**Step Four:** At step four, the ALJ considered "the entire record," and found that the claimant has the residual functional capacity ["RFC"] to

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to: occasionally climbing ramps and stairs but never climbing ladders, ropes and scaffolds; work that can be done either sitting or standing; occasional balancing, stooping, kneeling, crouching and crawling; frequent handling and fingering with both hands; frequent overhead reaching in all directions; occasional turning of the neck in all directions; and understanding, remembering and carrying out simple instructions.

(R. 17).

The ALJ found that Mr. Arreizaga's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 18).

Finally, the ALJ determined that Mr. Arreizaga was unable to perform any past relevant work as a mailroom sorter and a mail carrier. (R. 20).

**Step Five:** At step five, the ALJ determined that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate." (R. 21).

---

OR

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

6

### C. Analysis of Mr. Arreizaga's Appeal

Mr. Arreizaga challenges the following aspects of the ALJ's decision: (1) the ALJ's step two finding that Mr. Arreizaga's depression and anxiety are non-severe, (2) the ALJ's step 3 finding that Mr. Arreizaga's neck impairment was not presumptively disabling, (3) the ALJ's credibility findings regarding Mr. Arreizaga's subjective complaints, and (4) the ALJ's RFC assessment and hypotheticals to the vocational expert.

#### i. The ALJ's finding that Mr. Arreizaga's depression and anxiety are non-severe

First, Mr. Arreizaga asserts that, at step two, the ALJ improperly decided that Mr. Arreizaga's depression and anxiety were non-severe. (Pl. Br. p. 17). Specifically, Mr. Arreizaga asserts that the ALJ failed to consider medical records from Mr. Arreizaga's primary care physician, which allegedly establish that Mr. Arreizaga's mental impairment is severe. (Pl. Br. p. 17–19).

The ALJ acknowledged that Mr. Arreizaga has been diagnosed with depression and anxiety. Those conditions have been addressed with medication, namely Cymbalta, first prescribed in November 2015. (R. 16). Results of a subsequent mental status examination have been "normal." (*Id.*). The ALJ considered Mr. Arreizaga's health treatment notes, and specifically found that Mr. Arreizaga complained of depression more than half of the time but not every day. (*Id.*). The ALJ also noted that Mr. Arreizaga did not take Cymbalta on a regular basis, but only when his pain was bad—a pattern, the ALJ found, that suggests noncompliance. (*Id.*).

The ALJ also provided a more detailed analysis of Mr. Arreizaga's mental status examination. Mr. Arreizaga was reported to have "appropriate appearance, a calm and cooperative presentation, appropriate speech, a full range and appropriate affect, no abnormal thought processes, good insight and judgment, grossly intact memory and cognition, full orientation, and an intact fund of knowledge." (R. 16). The examination did not reveal psychomotor retardation, mood fluctuations or weight changes. (*Id.*). On the whole, Mr. Arreizaga's claimed major depressive disorder was noted as "single episode,

7

moderate" and appeared to be based solely on Mr. Arreizaga's subjective report. (R. 16–17).

The ALJ also highlighted that the evidence indicates that Mr. Arreizaga's anxiety and depression caused no more than mild limitations to activities of daily living, social functioning or concentration. (R. 17). Finally, the ALJ noted that, on March 2, 2016, Mr. Arreizaga was discharged from mental health treatment at Catholic Charities for noncompliance with treatment. (*Id.*).

An impairment is deemed severe at step two if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521(a). In this case, substantial evidence supports the ALJ's finding that Mr. Arreizaga's mental impairments are non-severe. First, as the ALJ highlighted in his opinion, the medical records from Mr. Arreizaga's consistent, eleven-month treatment report normal findings. (Tr. 553, 561-62, 621, 625, 628-29, 631-32); (*See* R. 16). For example, the record states that Mr. Arreizaga is "calm, cooperative and maintains good eye contact" (R. 621), his thought process is "linear, logical," (R. 625; *see also* R. 632), his "fund of knowledge is intact" (R. 625; *see also* R. 632), his concentration is "intact" and his thought process is goal-directed (R. 553). Moreover, the record states that Mr. Arreizaga denied suicidal/homicidal ideations, any hallucinations, and paranoia. (R. 553, 562, 623, 628, 630–631). Here, a reasonable mind would accept that the record presents relevant evidence to support that Mr. Arreizaga was able to perfom basic work activities. Thus, the ALJ's non-severe finding was supported by substantial evidence.

Additionally, Mr. Arreizaga fails to show that any claimed error in the ALJ's non-severe finding is a *harmful* error. " '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination' . . . Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful." *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944 (SRC), 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). It

is true that the ALJ did not, in so many words, address the statements of Dr. Rosa, who is one of one of Mr. Arreizaga's treating physicians, that he was depressed, had difficulty performing tasks of daily living, and should have a psych evaluation. (R. 402–03). Dr. Rosa, an internist who is not a psychological or psychiatric specialist, merely recommended a psych evaluation. That evaluation occurred, and led to treatment. Dr. Rosa was not Mr. Arreizaga's treating or prescribing physician *with respect to his psychiatric condition*; rather, he was diagnosed, treated, and prescribed Cymbalta at the Mt. Carmel Guild Behavioral Health clinic and Riverside Medical Group. The ALJ reviewed and discussed those medical records. That course of treatment produced much of the objective evidence upon which the ALJ relied. (*See* R. 19) (citing to Exhibit 13F, R. 550–563). In addition, any error was harmless because the ALJ accounted for Mr. Arreizaga's mental impairments at step four by restricting the RFC to tasks that only require "understanding, remembering, and carrying out simple instructions." (R. 17). On appeal, Mr. Arreizaga has failed to establish any credible mental impairments that the ALJ may have omitted.

### ii. The ALJ's finding that Mr. Arreizaga's neck impairment was not presumptively disabling

Second, Mr. Arreizaga argues that, because the ALJ did not mention Mr. Arreizaga's neck disorder at step three, the ALJ failed to properly consider it. (Pl. Br. p. 19). At step three, the ALJ found that Mr. Arreizaga's "back disorder does not rise to the level of meeting the spinal stenosis, nerve root, or spinal cord compression requirements of medical listing 1.04 (with the attendant sensory or reflect loss, spinal arachnoiditis or pseudoclaudication), and is not supported by the necessary diagnostic and clinical evidence." (R. 17).

At step three, the ALJ must state which listings apply and explain why the listing criteria were or were not satisfied. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–120, 120 n. 2 (3d Cir. 2000). However, the ALJ is "not require[d] to use particular language or adhere to a particular format in conducting his analysis." *Holley v. Colvin*, 975 F. Supp. 2d 467, 476–77 (D.N.J. 2013) (internal citations omitted), *aff'd*, 590 F. App'x 167 (3d Cir. 2014).

9

Rather, the "ALJ satisfies this standard by 'clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing.'" *Id.* at 120 (citing *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed.Appx. 468, 471 (3d Cir.2005).

Here, as discussed above, the ALJ broadly used the term "back disorder" and did not include the term "neck disorder" when considering whether Mr. Arreizaga has an impairment or combination of impairments that meets one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. However, no magic language is required, particularly when, as here, the listing in dispute is the same listing that the ALJ rejected—1.04 Disorders of the Spine. (Pl. Br. p. 19–21; Pl. Reply p. 2–3). The ALJ properly considered whether Mr. Arreizaga's impairments fell within Listing 1.04 and determined that the listing's requirements were not met. (R. 17) (considering that the record did not indicate spinal stenosis, nerve root or spinal cord compression requirements with the attending sensory or reflex loss, spinal arachnoiditis, or pseudoclaudication).

Substantial evidence supports the ALJ's conclusion. First, at several examinations between April 2013 and September 2014, Mr. Arreizaga exhibited intact sensation, full muscle strength, and normal muscle bulk and tone (R. 265, 267, 358, 366, 395, 410, 434). Second, from October 2015 onward, Mr. Arreizaga displayed a full range of motion and a supple neck. (*see e.g.*, R. 576–577, 599, 610). Third, Nikolaos Galakos, M.D. ("Dr. Galakos") and Arvind Chopra, M.D. ("Dr. Chopra"), who both reviewed the record, determined that Mr. Arreizaga's impairments did not meet Listing 1.04. (R. 75–77, 85–88).[4] Both doctors reviewed Mr. Arreizaga's medical records from his primary care

---

[4] Mr. Arreizaga argues that the opinions of both Drs. Galakos and Chopra should not be given much weight because they were given in 2014 and thus did not have access to additional medical evidence. (Pl. Reply p. 3) (citing R. 402–632). Nevertheless, the opinions of Drs. Galakos and Chopra are only one aspect of the entire record, which, as a whole, provides substantial support to the ALJ's opinion.

physician, Eddie Rosa, M.D., ("Dr. Rosa"), (R. 75, 86), including those records related his neck impairment. (*See* R. 77, 88) (considering that Mr. Arreizaga's May 2013 MRI revealed C5, C6, C7 disk herniation). Based on those records and their own assessment, both doctors determined that Mr. Arreizaga is not disabled. (R. 75–77, 85–88).

In sum, the record supports the ALJ's finding that no specific nor combination of impairments, including neck impairments, qualified as presumptively disabling under Listing 1.04.

### iii. The ALJ's credibility finding regarding Mr. Arreizaga's testimony

Mr. Arreizaga argues that the ALJ's credibility findings on Mr. Arreizaga's testimony regarding both his pain and mental suffering are not supported by the record. (Pl. Br. p. 19–23). The ALJ considered Mr. Arreizaga's testimony regarding his neck and back pain, (R. 18), but then found that Mr. Arreizaga's "statements concerning the intensity, persistence and limiting effects of pain or other symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

First, I consider Mr. Arreizaga's testimony regarding his pain and reaction to treatment. According to Mr. Arreizaga, neck and back injections gave no relief (R. 44), his medications assisted his pain, but only for a short time (R. 43), and physical therapy produced no improvement, (R. 43). The ALJ, however, found that Mr. Arreizaga's symptoms are controllable with treatment. (R. 18). That finding is supported by the record. Mr. Arreizaga's testimony before the ALJ is undermined by the fact that he consistently told his pain management providers that his treatments gave him relief. (R. 266, 269, 274, 279, 286, 288, 294, 306, 312, 319, 325, 333, 345, 357, 388, 409, 440, 453, 474, 485, 496, 501, 506, 511, 519, 523, 527, 547); (*see also* R. 531, 535) (reporting that "medications control the pain").

Mr. Arreizaga's testimony also conflicts with reports from his treating physicians. For example, Mr. Arreizaga testified that injections did not help his

11

pain (R. 44); however, Shailendra Hejala, M.D. ("Dr. Hejala"), of Jersey Rehab, Mr. Arreizaga's pain management clinic, reported that Mr. Arreizaga experienced immediate relief after injections. (*See* R. 337) ("60 mg of IM Toradol injection was administered today . . . The patient tolerated the procedure well with immediate relief thereafter, and no adverse side effects."). More generally, Dr. Hejala also noted that Mr. Arreizaga's pain management treatment was "improving" his condition. (R. 336, 343, 461, 466, 472, 478, 480, 484, 489, 491).[5]

The ALJ also noted that Mr. Arreizaga reported a wide range of activities of daily living. (R. 18) (listing "engaging in personal care, preparing meals, performing house and yard work at times, and going shopping"). This too is supported by the record. (R. 270, 275, 280, 289, 295, 307, 389, 520) (listing activities of daily living as: "independent with self care . . . able to walk short distances and climb more than one flight of stairs . . . able to lift up to 10 pounds occasionally").

It is true that an ALJ must in general give significant weight to a claimant's subjective testimony regarding inability to perform even light or sedentary work. 20 C.F.R. § 404.1529(c); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981). The same deference is not due, however, when that testimony is not supported by competent medical evidence. *Holley,* 975 F. Supp. 2d at 480 (citing *Matullo v. Bowen,* 926 F.2d 240, 245 (3d Cir.1990)). An ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record. 20 CFR § 404.1529(a); *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 433 (3d Cir. 1999). What is required overall is that the

---

[5] The ALJ also noted that some weight is given to that fact that, on August 28, 2014, Dr. Hejala recommended that Mr. Arreizaga could attempt to return to work for four hours per day with no lifting, pushing, or pulling more than 10 pounds. (R. 19). The ALJ agreed with the exertional limitations proscribed by Dr. Hejala, but noted that the record does not support a work restriction of less than 8 hours. (*Id.*). Mr. Arreizaga argues that Dr. Hejala's recommendation does not support the ALJ's conclusion. (Pl. Reply p. 4). By the ALJ's own admission, that contention is correct as far as it goes. Regardless, the ALJ's opinion is supported by the record as a whole, including Dr. Hejala's own reports.

12

ALJ give the claimant's testimony "serious consideration," state his reasons for accepting or discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Ultimately, "[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Credibility determinations are entitled to "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188-89 (3d Cir. 2007) (citing *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)).

Here, the ALJ seriously considered Mr. Arreizaga's pain and impairment allegations (R. 18), and in fact found that Mr. Arreizaga experiences several severe impairments (R. 16, 18). However, the ALJ also found, based on the medical evidence, that the diagnostic findings did not support impairment to the *degree* that Mr. Arreizaga alleged. (R. 18). I will defer to the ALJ's credibility determinations, which, as discussed above, finds support in the record.[6]

### iv. The ALJ's RFC assessment and hypotheticals to the vocational expert

---

[6] At one point in Mr. Arreizaga's briefing, counsel airs some general frustrations with the Social Security and disability review process itself:

> When treating and examining physicians opine that a plaintiff is unable to perform work and are disabled, the Administration routinely argues that a finding of disability is reserved to the Commissioner. However, when no medical opinion is given as to employability, the Administration tries to support its finding of non-disability, they then point to the fact that there is no medical opinion that a plaintiff cannot work. Clearly, the defendant cannot have it both ways.

(Pl. Br. p. 22). Whatever the general grievance may be, the record of *this* case demonstrates that the ALJ did review the entire record, including Dr. Rosa's opinion that Mr. Arreizaga is not fit to work, but nevertheless determined that Mr. Arreizaga is not disabled. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled").

Mr. Arreizaga argues that the ALJ failed to properly assess the RFC, and that at step five, the ALJ failed to properly formulate hypothetical questions to the impartial vocational expert. (Pl. Br. p. 24–28).

I first consider whether the ALJ properly assessed the RFC, an issue relevant to steps four and five. 20 C.F.R. § 404.1520. The RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir.2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n. 1 (3d Cir.1999)). To determine a claimant's RFC, the ALJ considers how the claimant's limitations may affect the claimant's ability to do work on a regular and continuing basis. 20 C.F.R. § 404.1545(b)-(d). "A claimant's RFC is expressed in terms of the exertional levels of work, which range from sedentary, light, medium, heavy, to very heavy work." *Mellor-Milam v. Comm'r of Soc. Sec.*, No. 13-CV-5732 JBS, 2014 WL 7405209, at *14 (D.N.J. Dec. 30, 2014) (citing SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)).

Under Social Security Ruling 96–8p, the RFC "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96–8p, 1996 WL 374184, at *1. Each function "must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours,') even if the final RFC assessment will combine activities." *Id.* "Only after the function-by-function analysis may the ALJ express the RFC in terms of the exertional levels of work." *Id.* at *1.

Mr. Arreizaga argues that the ALJ failed to comply with SSR 96-8p because "the ALJ's RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence." (Pl. Br. p. 25). Also, Mr. Arreizaga adds, the ALJ "erred by failing to focus on the plaintiff's ability to sustain work activities." (*Id.*). I disagree.

First, the ALJ's RFC assessment was not merely conclusory, but record-based. The ALJ found that Mr. Arreizaga had the RFC to perform sedentary

14

work as defined in 20 CFR 404.1567(a) subject to a number of limitations discussed at Section II.B, *supra*. To support that finding, the ALJ identified and discussed evidence from the record, including Mr. Arreizaga's treatment history, Mr. Arreizaga's response to treatment, the findings from Mr. Arreizaga's physical and mental examinations, the opinions of Drs. Galakos and Chopra, a recommendation from Dr. Hejala, and Mr. Arreizaga's ability to engage in a range of daily activities. (R. 17–20); *see also* Section II.C.iii, *supra*. Second, the ALJ considered Mr. Arreizaga's ability to sustain work activities, and, as discussed at Section II.C.iii n. 6, *supra*, determined that the record as a whole indicated that Mr. Arreizaga is able to work a full eight-hour workday.

I next consider whether the ALJ properly formulated hypotheticals to the vocational expert. "A hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002) (emphasis in original) (internal citation omitted). Even so, the ALJ is not required to "submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.2005) (emphasis in original). Rather, "the hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments "as contained in the record." *Id*. Meaning, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Id*. (emphasis in original). "However, where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical." *Zirnsak v. Colvin*, 777 F.3d 607, 614–15 (3d Cir. 2014).

The ALJ first posed three hypotheticals to the vocational expert, which revealed that Mr. Arreizaga could perform the requirements of an addressing clerk, call out operation, and order clerk. (R. 65–68; *see also* R. 22). Relevant here, the ALJ then posed a hypothetical about a person off task for 15% of the workday due to their symptoms. (R. 68). The vocational expert responded that

15

such a person, at the unskilled level, would have a significantly reduced work base. (*Id.*).

After the ALJ posed his questions, Mr. Arreizaga's attorney asked the vocational expert if a person who had difficulty sitting could perform at the proposed jobs, to which the vocational expert replied that the requirements could be met, particularly with a standing desk. (R. 69–70). Mr. Arreizaga's attorney also asked if fluent English would be a necessity for the proposed jobs, to which the vocational expert responded that lack of language skills "may not be problematic" and that "it's kind of a grey area" considering how many jobs are now outsourced to countries where English is not the primary language. (R. 69). Throughout the hearing, Mr. Arreizaga indicated that he struggled with English (R. 35–71), but also testified that he can read and write in English. (R. 70). In the opinion, however, the ALJ noted that Mr. Arreizaga was able to work as a mail carrier with the U.S. Postal Service, which requires basic competency in reading and speaking English. (R. 18).

Mr. Arreizaga argues that the ALJ failed to consider all of his documented limitations. (Pl. Br. p. 25–28; Pl. Reply p. 4). Had the ALJ properly taken into account Mr. Arreizaga's physical, mental, and language limitations, Mr. Arreizaga claims, the ALJ would have properly determined that *no jobs* are suitable for his disabilities. (*Id.*). To some degree, this contention is simply a restatement of the earlier disagreements, discussed above, with the ALJ's findings regarding impairments and the RFC.

The ALJ posed hypotheticals to the vocational expert that mirrored the limitations properly determined in the RFC finding as discussed *supra*. (R. 65–68). To the extent Mr. Arreizaga argues that the ALJ did not consider hypotheticals proposed by Mr. Arreizaga's counsel, the ALJ has the discretion to reject a hypothetical that includes an unsupported limitation that the ALJ did not find as a matter of fact. *Zirnsak*, 777 F.3d at 614–15.

## CONCLUSION

The ALJ's decision is affirmed. An appropriate order accompanies this opinion.

Dated: February 20, 2019

KEVIN MCNULTY
**United States District Judge**